FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
8/9/2022 7:16 PM
KATHLEEN VIGIL CLERK OF THE COURT
Kayla Vigil

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

JOLEEN YOUNGERS,
AS PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH ESTATE
OF I.G. A DECEASED MINOR CHILD,
M.G., A.G., AND E.A.

      Plaintiffs,

vs.

                              Case No.: __D-101-CV-2022-01441____
                              Judge: Case assigned to Biedscheid, Bryan

TIKTOK, INC. AND BYTEDANCE, INC.

      Defendants

# COMPLAINT

**"[W]e must hold social media platforms accountable for the national experiment they're conducting on our children for profit."**

President Joe Biden, March 1, 2022, State of the Union Address.

COMES NOW, Plaintiff, Joleen Youngers, as the personal representative of the wrongful death estate of I.G., as well as M.G., A.G., and, E.A. (collectively, "Plaintiffs"), by and through their undersigned counsel, complaining of TikTok, Inc. and ByteDance, Inc. (collectively the "Tik-Tok Defendants"), and for their causes of action state:

## INTRODUCTION

1.    This case is about the dangerous, and often deadly, social media product known as TikTok. The TikTok Defendants are the owners, designers, programmers, manufacturers, sellers, and/or distributors of the TikTok App. The TikTok Defendants' business model is to addict millions of children to their product in order to generate billions of dollars selling targeted advertising.

2.      In their rush to cash in on advertising revenues, the TikTok Defendants designed and distributed a dangerously defective product to millions of children. TikTok's design features and lack of safeguards encourage children to engage in dangerous behaviors with deadly consequences (like choking themselves until they pass out). Despite knowing that TikTok encouraged impressionable children to engage in dangerous and deadly behaviors, the TikTok Defendants did nothing to correct their defective product and have instead unleashed a wave of death for young children, ranging in age from 8 year olds to teenagers.

3.      One of the TikTok Defendants' victims was a handsome 13 year old boy from New Mexico named I.G. In the early morning hours of August 19, 2020, I.G. died by accidentally hanging himself with a belt while attempting to accomplish the infamous TikTok Blackout Challenge – attempting to choke himself until he passed out. I.G.'s attempt at the Blackout Challenge proved fatal.

4.      I.G.'s family members (including his grandmother, E.A.) discovered I.G. hanging on the backside of the bathroom door by a belt wrapped around his neck. They forced their way into the bathroom and rushed to get I.G. down by using scissors to cut the belt off his neck.

5.      After cutting off the belt, E.A. could hear I.G.'s faint heartbeat. She frantically provided CPR and cried out for I.G. to come back and to live. After several attempts at CPR, I.G. gasped a final time, but E.A. could not revive him. E.A. laid on the floor next to her thirteen-year old grandson and held him. By the time the police and paramedics arrived, I.G. was pronounced dead.

6.      During these events, I.G.'s phone was discovered in the bathroom, when an alarm or timer began sounding. Based on this timer, as well as I.G.'s documented history of attempting

**COMPLAINT**                                                                 **Page 2 of 37**

TikTok challenges, there is no question that I.G.'s death was a result of him attempting a TikTok Blackout Challenge – something the TikTok Defendants have known about for years but refused to protect children from until very recently.

7.     The TikTok Defendants purposefully designed TikTok with features that create and sustain addiction in their users, including children. Using defective automated algorithms and digital psychological features in their product such as likes, hearts, direct messages, notifications, and reminders, the TikTok Defendants manipulate children to be on TikTok at all hours of the day and night and to engage in a repetitive and dopamine-driven feedback loop of viewing, watching, sharing, and liking videos.

8.     TikTok's defective design features (and the lack of adequate safeguards and warnings in the product) allow children (who are too young to be on TikTok in the first place) to create and use multiple TikTok accounts.  TikTok's defective design features and algorithm also constantly remind young children users to get back on TikTok if they have gotten off the app for a period of time deemed unacceptable by TikTok.

9.     The TikTok Defendants and their defective product encourage children to engage in variety of dangerous behaviors such as being on TikTok for hours on end, being on TikTok at all hours of the night, and attempting dangerous and potentially deadly TikTok challenges such as choking oneself until passing out.  The TikTok Defendants knew such behaviors resulted in mental health problems, sleep deprivation, serious personal injury, and even death.  The TikTok Defendants have known about these dangers for years, but have failed to protect users such as I.G. and many others from such dangers.

**COMPLAINT**                                                                      **Page 3 of 37**

10.     Plaintiffs bring this case against the TikTok Defendants to hold them accountable for the predictable and known consequences of their experiment on America's youth. The TikTok Defendants hooked I.G. on their dangerously defective product and failed to include safeguards in the design of their product that could have saved I.G.'s life. Despite knowing their product encouraged dangerous behaviors, the TikTok Defendants failed to provide any warnings or safeguards that could have prevented I.G.'s death.

11.     Plaintiffs do not seek to hold any of the TikTok Defendants liable as the speaker or publisher of third-party content or for their good faith efforts to limit exposure to third party content; instead, Plaintiffs seek to hold each of the TikTok Defendants responsible for its own independent conduct as designers, programmers, manufacturers, sellers, and/or distributors of their dangerously defective social media product and for their own independent intentional and negligent acts as further alleged herein. As a result, Plaintiffs' claims fall outside any limitations of liability under by Section 230(c) of the Communications Decency Act.

## PARTIES

12.     I.G. was a minor resident of Polvadera, Socorro County, New Mexico. On August 19, 2020, at the age of thirteen, I.G. accidentally hung himself while attempting a TikTok blackout challenge.

13.     Joleen K. Youngers is an attorney in Santa Fe, New Mexico, who is the court appointed personal representative of the wrongful death estate of I.G. and brings claims on behalf of the estate.  Joleen Youngers, in her capacity as the personal representative of the wrongful death estate of I.G., has not entered into a Terms of Service agreement or other contractual

**COMPLAINT**                                                                          **Page 4 of 37**

relationship with TikTok, Inc. or ByteDance, Inc. in connection with I.G.'s use of TikTok. Consequently, Plaintiffs are not bound by arbitration, class action waiver, or any other provisions set forth in any Terms of Service agreement that I.G. may have entered.    Additionally, as the personal representative of the wrongful death estate of I.G., Joleen K. Youngers and all other Plaintiffs expressly disaffirm any and all Terms of Service agreements with TikTok which I.G. may have entered.

14.   M.G. is an individual resident of Polvadera, Socorro County, New Mexico. M.G. is I.G.'s father and is bringing an individual claim for loss of consortium.

15.   A.G. is an individual resident of Polvadera, Socorro County, New Mexico. A.G. is I.G.'s mother and is bringing an individual claim for loss of consortium.

16.   E.A. is an individual resident of Polvadera, Socorro County, New Mexico. E.A. is I.G.'s grandmother and is bringing individual claims for loss of consortium and for negligent infliction of emotional distress.

17.   Defendant TikTok, Inc. is a California corporation with its principal place of business located in Culver City, California. TikTok, Inc. owns and operates the TikTok social media platform, an application and product that is widely marketed by TikTok and available to users throughout the United States.  TikTok, Inc. does business in the State of New Mexico but has not been admitted to do business in this state. TikTok, Inc. has not designated and does not maintain a statutory agent upon whom service of process may be had. Accordingly, Pursuant to NMSA 1978, Section 38-1-6 (1993), service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause.

The New Mexico Secretary of State will then complete service by serving Defendant Tik-Tok, Inc.'s registered agent for service of process in California: CSC Lawyers Incorporating Service at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

18.   At all times relevant, TikTok, Inc. was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of TikTok, Inc.

19.   ByteDance, Inc. is a Delaware corporation with a principal place of business at 250 Bryant Street, Mountain View, California 94041. ByteDance, Inc. does business in the state of New Mexico but has not been admitted to do business in this state and has not designated and does not maintain a statutory agent upon whom service of process may be had.  Accordingly, Pursuant to NMSA 1978, Section 38-1-6 (1993), service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving Defendant ByteDance, Inc.'s registered agent for service of process in Delaware:  Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

20.   At all times relevant, TikTok, Inc. was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of TikTok, Inc.

21.   TikTok, Inc. is highly integrated with its Chinese parent corporation, ByteDance.  TikTok, Inc.'s engineering manager works on both TikTok and ByteDance's similar Chinese app, Douyin.   TikTok's development processes are closely intertwined with Douyin's processes.  TikTok's employees are also deeply interwoven and connected with ByteDance's

**COMPLAINT**                                                                                           **Page 6 of 37**

ecosystem. Both corporations and their employees use a ByteDance product called Lark, a corporate internal communication system like Slack but with aggressive performance - management features aimed at forcing employees to utilize the system at all times.

22.     Collectively, TikTok, Inc. and ByteDance, Inc. are referred to herein as the "TikTok Defendants."

## JURISDICTION AND VENUE

23.     Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

24.     This Court has subject matter jurisdiction over this case.

25.     This Court has personal jurisdiction over each of the Defendants.

26.     The TikTok, Inc. and Bytedance, Inc. Defendants do business in New Mexico and have purposefully availed themselves of the privilege of conducting activities within New Mexico, and each has sufficient minimum contacts with New Mexico such that this Court's exercise of personal jurisdiction over each social media defendant comports with due process.

27.     I.G. downloaded and used the TikTok app in New Mexico. While I.G. used TikTok in New Mexico, the TikTok Defendants were in direct communication with I.G. The TikTok Defendants were sending information to I.G. and collecting information about I.G. while he was in New Mexico. While I.G. used TikTok in New Mexico, the TikTok Defendants tailored I.G.'s interactions on TikTok and controlled his use of TikTok based on information

the TikTok Defendants collected from I.G. while he was in New Mexico. The TikTok Defendants used the information they collected about I.G. to target ads for I.G. to see while he used TikTok in New Mexico.

28.     Upon information and belief, hundreds of thousands of New Mexicans have downloaded and used the TikTok app in New Mexico. While those New Mexicans used TikTok in New Mexico, the TikTok Defendants were in direct communication with them. The TikTok Defendants were sending information to their New Mexican users and collecting information about those same New Mexican users while they were in New Mexico. While New Mexicans used TikTok in New Mexico, the TikTok Defendants tailored their interactions on TikTok and controlled their use of TikTok based on information the TikTok Defendants collected about their New Mexican users.  The TikTok Defendants also targeted ads for their New Mexico users to see based on information the information the TikTok Defendants collected about their New Mexican users while those same New Mexicans used TikTok in New Mexico.

29.     Venue is proper in Santa Fe County pursuant to N.M.S.A § 38-3-1.

## AMOUNT IN CONTROVERSY

30.     The amount in controversy in this case is in excess of $75,000.

## FACTUAL ALLEGATIONS

A.      **The TikTok Defendants Are Multibillion Dollar Social Media Corporations Whose Purpose Is To Collect User Data, Manipulate User Behavior, And Sell Billions Of Dollars Of Targeted Advertising**

31.     The TikTok app is ostensibly a video sharing social media platform which allows and encourages users to create, share, and view short video clips.  But the TikTok app is also a

highly sophisticated product which collects massive amounts of data from TikTok users. It does so in order to manipulate user behavior and thereby sell billions of dollars of advertising targeted towards the very users (including children) from whom it continuously collects data.

32.     TikTok users, including minor children, who open the TikTok app are confronted with an endless stream of curated videos selected by the TikTok Defendants' proprietary algorithm and shown to users on their For You Page which is a "defining feature of the TikTok platform[.]"[1]

33.     According to the TikTok Defendants, the For You Page is "central to the TikTok experience and where most of our users spend their time."[2]

34.     The TikTok Defendants' algorithm selects which videos are shown to each user based on the user's demographics, including age, user interactions such as the videos viewed and shared, and seemingly limitless amounts of metadata tied to each user's digital presence and device settings which is collected and analyzed by the TikTok Defendants.

35.     The TikTok Defendants' algorithm "delivers content to each user that is likely to be of interest to that particular user."[3]  The TikTok Defendants boast that "while different people may come upon some of the same standout videos, each person's feed is unique and tailored to that specific individual."[4]

---

[1] https://newsroom.tiktok.com/en-us/how-tiktok-recommends-videos-for-you/
[2] *Id.*
[3] *Id.*
[4] *Id.*

**COMPLAINT**                                                                 **Page 9 of 37**

36.    The TikTok Defendants claim that their algorithm is "designed with safety as a consideration."

37.    In actuality, the TikTok Defendants' app and algorithm are designed to maximize user engagement and increase corporate profits. According to recent media reports, the TikTok Defendants' and their app and algorithm have been wildly successful at accomplishing these goals.

38.    The TikTok app is one of the world's fastest-growing social media products. It is a "global phenomenon" with a massive American audience.

39.    In November 2019, the *Washington Post* reported that the TikTok app had been downloaded more than 1.3 billion times worldwide and more than 120 million times in the Unites States.

40.    Alarmingly, recent estimated age demographics show that a staggering 28 percent of TikTok's users are children under the age of 18.

41.    In 2021, the TikTok Defendants reported that TikTok had one billion active global users and revenues of $4.6 billion.

42.    Virtually all of the $4.6 billion dollars of revenue generated by TikTok is the result of extensive data collection and the selling of targeted advertising

43.    The current estimated value of the TikTok Defendants' social media / data collection / targeted advertising product is between $50 and $75 billion dollars.

**B.    TikTok Is Designed To Addict, Manipulate, And Ultimately Control The Behavior of Children**

44.  TikTok is a social media product designed to be used by children and actively marketed to children across the United States and in New Mexico.  TikTok knows that large numbers of children under the age of 13 use its product despite Terms of Use which purport to restrict use to individuals who are 13 and older.

45.  TikTok markets to minor children not only through its own efforts but also works with and actively encourages advertisers to create ads targeted at and appealing to teens, and even to children under the age of 13.  TikTok spends millions of dollars researching, analyzing, and experimenting with young children to find ways to make its product more appealing and addictive to these age groups, as these age groups are seen as the key to TikTok's long term profitability and market dominance.

46.  TikTok is aware that large numbers of children under the age of 18 use its product without parental consent.  It designs its product in a manner that allows and/or does not prevent such use in order to increase user engagement and, thereby, increase its own profits.

47.  TikTok is also aware that large numbers of children under the age of 13 use its product despite Terms of Service which purport to restrict use to individuals who are 13 and older.  The TikTok Defendants designed its product in a manner that allows and/or does not prevent such use in order to increase user engagement and, thereby, increase its own profits.

48.  Furthermore, even in instances where the TikTok Defendants have actual or constructive knowledge of underage users opening accounts, posting, and otherwise using its social media product, the TikTok Defendants fail to prevent and protect against such harmful underage use.

**COMPLAINT**                                                    **Page 11 of 37**

49.     Thus, the TikTok Defendants prey upon vulnerable children users who are thrust into a
        never-ending dopamine feedback loop which creates addiction and encourages children to
        engage in the dangerous behaviors of using TikTok for too many hours each day, using
        TikTok too late at night when they should be sleeping, and engaging in TikTok challenges
        which are known to cause serious injury and even death.

50.     Children are particularly susceptible to TikTok's manipulative algorithm and have dimin-
        ished capacity to avoid self-destructive behaviors.  The human brain is still developing
        during adolescence in ways consistent with adolescents' demonstrated psychosocial imma-
        turity.  Specifically, adolescents' brains are not yet fully developed in regions related to
        risk evaluation, emotional regulation, and impulse control.

51.     The frontal lobes, and in particular the pre-frontal cortex, of the brain play an essential part
        in the higher order cognitive functions, impulse control and executive decision-making.
        These regions of the brain are central to the process of planning and decision-making, in-
        cluding the evaluation of future consequences and the weighing of risk and reward.  They
        are also essential to the ability to control emotions and inhibit impulses.  MRI studies have
        shown that the pre-frontal cortex is one of the last regions of the brain to mature.

52.     During childhood and adolescence, the brain is maturing in at least two ways.  First, the
        brain undergoes myelination, the process through which the neural pathways connecting
        different parts of the brain become insulated with white fatty tissue called myelin.  Second,
        during childhood and adolescence, the brain is undergoing "pruning" - the pairing away of
        unused synapses, leading to more efficient neural connections.  Through myelination and
        pruning, the brain's frontal lobes change to help the brain work faster and more efficiently,

improving the executive functions of the frontal lobes, including impulse control and risk evaluation. This shift in the brain's composition continues throughout adolescence and into young adulthood.

53.     In late adolescence, important aspects of brain maturation remain incomplete, particularly those involving the brain's executive functions and the coordinated activity regions involved in emotion and cognition. As such, the part of the brain that is critical for impulses and emotions and mature, considered decision-making is still developing during adolescence consistent with the demonstrated behavioral and psychosocial immaturity of juveniles.

54.     The algorithms in TikTok's social media product exploit minor users diminished decision-making capacity, impulse control, emotional maturity, and psychosocial resiliency caused by minor users' incomplete brain development. The TikTok Defendants know, or in the exercise of reasonable care should know, that because its minor users' frontal lobes are not fully developed, such users are much more likely to sustain serious physical and psychosocial harm through their social media use than adult users. Nevertheless, the TikTok Defendants failed to design the TikTok product with adequate protections to account for and ameliorate the psychosocial immaturity of its minor users.

55.     Unfortunately for children users of TikTok in the United States and in New Mexico, the TikTok Defendants' primary focus has been on the goals of user engagement, data collection, targeted advertising sales, and making billions of dollars.

**COMPLAINT**                                                                    **Page 13 of 37**

56. To make matters even worse, the COVID-19 pandemic accelerated the use of TikTok by children. In 2020, a staggering 81 percent of 14-to-22-year-olds reported using social media either "daily" or "almost constantly."

57. To date, the TikTok Defendants have shirked all their safety responsibilities for the health and safety of very children the TikTok Defendants seek to exploit.

58. A July 2021 report titled *Pathways: How digital design puts children at risk,* published by 5Rights Foundation detailed "alarming and upsetting" results from interviews with digital designers and children which lays bare how the commercial objectives of digital social media companies, like TikTok, translate into design features that negatively impact children.

59. The *Pathways* report shockingly describes the social media world in which today's children are living as one in which the social media conglomerates, including TikTok, push products which intend to maximize the time spent using the product and shaping the children's behavior. A digital design professional interviewed by 5Rights Foundation put it this way — "companies make their money from attention. Reducing attention will reduce revenue."

60. As one digital design professional included in the *Pathways* report declared: "[t]here are no safety standards — there is no ethics board in the digital space."

61. From the outset, the TikTok Defendants have intentionally designed their products to maximize the time children spend on TikTok. The TikTok Defendants have been well aware of the risks identified in these (and many other) reports for years and know full well that these reports correctly identify serious safety hazards and concerns with their respective

products. Nevertheless, the TikTok Defendants failed to take any significant action to correct any of the risks and safety hazards identified and known to them.

62.    Social media giants like TikTok have seized the opportunity presented by the digital wild west to manipulate and control the behavior of vulnerable children.

63.    The TikTok Defendants have intentionally and deliberately failed to make economically and technologically feasible design changes in TikTok to prevent young children from creating TikTok accounts, to make TikTok safe for young children, to protect young users from addiction to TikTok, to prevent its algorithm for presenting  dangerous challenges to children (including the Blackout Challenge), and to stop manipulating vulnerable children into engaging in dangerous behaviors like choking themselves until they pass out which often causes serious injury or even death.

### C.    The TikTok Defendants Know Their Defective Algorithm Virally Spreads Dangerous and Deadly TikTok Challenges That Kill Children

64.    At all relevant times, the TikTok App contained an algorithm designed to promote TikTok challenges to young users to increase their engagement and increase TikTok's profits. TikTok challenges involve users filming themselves engaging in behavior that mimics and often times "one -ups" other users posting videos engaging in the same or similar conduct.  These TikTok Challenges routinely involve dangerous or risky conduct.  The TikTok algorithm presents these often dangerous challenges to users on their For You Page and encourages users to create, share, and participate in the challenge.

65.    TikTok's app and algorithm have caused numerous dangerous TikTok challenges to spread virally on TikTok. Some of the dangerous and deadly TikTok challenges include the following:

| | | |
|---|---|---|
| ➤ | *Fire Mirror Challenge* | involves participants spraying shapes on their mirror with a flammable liquid and then setting fire to it. |
| ➤ | *Orbeez Shooting Challenge* | involves participants shooting random strangers with tiny water-absorbent polymer beads using gel blaster guns |
| ➤ | *Penny Challenge* | involves sliding a penny behind a partially plugged-in phone charger |
| ➤ | *Benadryl Challenge* | involves consuming a dangerous amount of Benadryl in order to achieve hallucinogenic effects |
| ➤ | *Skull Breaker Challenge* | involves users jumping in the air while friends kick their feet out from underneath them, causing the users to flip in the air and fall back on their head |
| ➤ | *Cha-Cha Slide Challenge* | involves users swerving their vehicles all over the road to the famous song by the same name |
| ➤ | *Dry Scoop Challenge* | involves users ingesting a heaping scoop of undiluted supplemental energy powder |
| ➤ | *Nyquil Chicken Challenge* | involves soaking chicken breast in cough medicine like Nyquil and cooking it, boiling off the water and alcohol in it and leaving the chicken saturated with a highly concentrated amount of drugs in the meat |
| ➤ | *Tooth Filing Challenge* | involves users filing down their teeth with a nail file |
| ➤ | *Fax Wax Challenge* | involves users covering their entire face, including their eyes, with hot wax before ripping it off |
| ➤ | *Coronavirus Challenge* | involves users licking random items and surfaces in public during the midst of the global COVID-19 pandemic |

| | | |
|---|---|---|
| ➢ | *Scalp Popping Challenge* | involves users twisting a piece of hair on the crown of someone's head around their fingers and pulling upward, creating a "popping" effect on their scalp |
| ➢ | *Cinnamon Challenge* | involves users consuming dangerously large amounts of cinnamon with the aim of achieving an intoxicating high |
| ➢ | *Throw it in the Air Challenge* | involves users standing in a circle looking down at a cellphone on the ground as someone throws an object into the air, and the goal is to not flinch as you watch the object fall on one of the participant's heads |
| ➢ | *Corn Cob Challenge* | involves users attaching a corn cob to a power drill and attempting to each the corn as it spins |
| ➢ | *Gorilla Glue Challenge* | involves users using a strong adhesive to stick objects to themselves |
| ➢ | *Kiki Challenge* | involves users getting out of moving vehicles to dance alongside in the roadway |
| ➢ | *Salt and Ice Challenge* | involves users putting salt on their skin and then holding an ice cube on the spot for as long as possible, creating a chemical reaction that causes pain and can lead to burns |
| ➢ | *Snorting Challenge* | involves users snorting an entire latex condom into their nose before pulling it out of their mouth |
| ➢ | *Hot Water Challenge* | involves users pouring boiling hot water on someone else |
| ➢ | *Fire Challenge* | involves users dousing themselves in a flammable liquid and then lighting themselves on fire |

**COMPLAINT**                                                      **Page 17 of 37**

| ➢ *Milk Crate Challenge* | involves participants stacking a mountain of milk crates and attempting to ascend and descend the unstable structure without falling |
|---|---|
| ➢ *Water Bottle Chug Challenge* | Involves participants drinking an entire bottle of water in one second |

66. One of the deadliest TikTok Challenges is the Blackout Challenge, which encourages users to choke themselves with belts, purse strings, or anything similar until passing out.

67. Upon information and belief, 13-year-old I.G. died from attempting the Blackout Challenge. I.G. attempted the challenge because the TikTok Defendants' product defects and negligence (as alleged herein) allowed I.G. and some of his friends to be on TikTok without adequate age verification, parental controls, warnings, time use restrictions (and other safeguards) and thus receive the Blackout Challenge on their For You Page and begin daring each other to do it.

68. The TikTok Defendants have long known that the Blackout Challenge and other dangerous challenges run rampant on TikTok as a result of their defective algorithms, but they have intentionally failed to correct the product defects alleged herein or reform their grossly negligent conduct.

69. Tragically, I.G. is just one of many in a growing list of children killed as a result of the TikTok Defendants' negligence and dangerously defective product.

70. On January 21, 2021, a 10-year-old girl in Italy died after attempting the Blackout Challenge.  According to Italian news reports, she tied a belt around her neck and choked

**COMPLAINT**

herself, causing her to go into cardiac arrest.  She was rushed to the hospital but was declared braindead upon arrival and ultimately died.

71.     On February 26, 2021, 9-year-old A.A. accidentally hung herself with the family dog leash affixed to the back of her bedroom door while attempting the Blackout Challenge. Her parents are now suing the TikTok Defendants in California.

72.     On July 15, 2021, 8-year-old L.W. accidentally hung herself with a rope tied to her bed while attempting the Blackout Challenge.  Her mother is now suing the TikTok Defendants in California.

73.     On March 22, 2021, a 12-year-old boy, J.H, died after attempting the Blackout Challenge. He was discovered breathless and unconscious by his twin brother and ultimately died after 19 days on life support.  J.H. attempted the Blackout Challenge by choking himself with a shoelace.

74.     On June 14, 2021, a 14-year-old boy died in Australia while attempting to take part in Tik-Tok's Blackout Challenge.

75.     In July 2021, a 12-year-old boy died in Oklahoma while attempting the Blackout Challenge.

76.     On December 7, 2021, 10-year-old N.A. from Chester, Pennsylvania excruciatingly died by asphyxiation when she attempted to perform the Blackout Challenge.

77.     The TikTok Defendants unquestionably knew that the deadly Blackout Challenge was spreading virally through its app and causing the unnecessary accidental deaths of children all over the world.

78.     The TikTok Defendants knew or should have known that failing to take immediate and significant action to correct the dangerous product defects in TikTok and to reform their

outrageous, willful, and wanton conduct would result in more injuries and deaths, especially among children, as a result of their users attempting the viral challenge.

79.    The TikTok Defendants knew or should have known that a failure to take immediate and significant corrective action would result in an unreasonable and unacceptable risk that additional users, and additional children, would fall victim to the deadly Blackout Challenge.

80.    The TikTok Defendants have failed to correct the dangerous defects in their product and have failed to reform their conduct because (1) they believe they can shirk legal responsibility for causing the death of young children, including I.G., by claiming immunity for their morally bankrupt behavior; (2) they know that allowing outrageous, dangerous and deadly challenges to be presented to children users by TikTok's defective algorithms increases the user engagement of children on TikTok; (3) they know that more user engagement of children means they get to collect more data on children users of TikTok; and (4) they know that the collection of more data on children increases their ability to sell advertising to companies wishing to target advertising those same children. In other words, the TikTok Defendants knowingly profit from a business model that causes children's deaths.

81.    In other similar litigation, TikTok Defendants claim that they have absolute immunity from legal responsibility for their outrageous conduct and dangerously defective products.

82.    In their view, the TikTok Defendants are free to knowingly put their dangerously defective product in the hands of children (without requiring age verification, parental controls, use restrictions, warnings, reprogramming of their algorithm, or any other safeguards) because they claim it is within their rights to knowingly create a dangerously defective algorithm which determines and presents (via computer programming) videos of people choking

**COMPLAINT**                                                            **Page 20 of 37**

themselves until they pass out to children because its algorithm has concluded such videos are well-tailored and likely to be of interest to children 13 years of age and younger.

83.     The TikTok Defendants' legal argument will miss the mark in this case.  Here, Plaintiffs seek to hold the TikTok Defendants legally accountable — not for making publishing decisions about what third party content to allow on its website — but rather for knowingly putting a dangerously defective product (the TikTok app and algorithm) in the hands of children without including even the most basic safeguards such as requiring age verification, parental controls, use restrictions, algorithm reprograming, or providing any warnings of the known and foreseeable risks and dangers arising from allowing children to use TikTok.

**D.     The TikTok Defendants' Negligence And Their Dangerously Defective Product Encouraged I.G. To Engage In The Dangerous Behavior That Resulted in I.G.'s Death.**

84.     I.G. was born on October 16, 2006.  He was a happy, fun loving, and active boy with a good sense of humor.  He enjoyed playing basketball, computer games, and fishing.

85.     When I.G. was approximately eleven years old, he got his first smart phone.  Not long after getting his smart phone, I.G. created a TikTok account and began using TikTok.

86.     When I.G. created his first TikTok account, the TikTok Defendants did not require him to provide any form of age verification that involved TikTok validating or otherwise ensuring accurate verification of age, nor did the TikTok Defendants require him to obtain parental approval or have any parental controls over his use of TikTok.  After I.G. began using TikTok, he would often be on TikTok for hours at a time.

**COMPLAINT**                                                                    **Page 21 of 37**

87.     Over time, and because of the addictive design and defective features of TikTok (as alleged

        herein), I.G. developed the habit of using TikTok at night while laying in bed.  He would

        stay up at all hours of the night (and sometimes into the following morning) using TikTok.

        I.G.'s compulsive use of TikTok, at times, caused him to become sleep deprived and even

        altered his mental state and cognitive abilities.

88.     Upon information and belief, through the use of the TikTok app and algorithm, the TikTok

        Defendants presented I.G. and many of his friends with various TikTok challenges, includ-

        ing the TikTok Blackout Challenge.  I.G. and his friends thought the challenges were in-

        teresting and funny.  Upon information and belief, the TikTok challenges presented on

        I.G.'s For You Page included, among others, the Cinnamon Challenge, the Water Bottle

        Chug challenge, the Blackout Challenge, and potentially many others.  In the year preced-

        ing his death, I.G. attempted the Cinnamon Challenge and the Water Bottle Chug Chal-

        lenge.

89.     Upon information and belief, I.G. and his teenage friends may have even dared or chal-

        lenged each other to try the challenges TikTok presented on their For You Pages.

90.     Upon information and belief, sometime during the early morning hours of August 19, 2020,

        after staying up late into the night of August 18 and into the morning hours of August 19,

        while in a sleep deprived and altered mental state, I.G. did in fact attempt the TikTok

        Blackout Challenge.  Tragically, however, rather than waking up after choking himself and

        passing out, I.G. did not survive the challenge.  Instead, he died by hanging at age 13.

E. **Plaintiffs' Claims Against the TikTok Defendants Are Not Subject to Any Enforceable Arbitration Clause and Do Not Implicate Section 230 of the CDA.**

91.    TikTok has Terms of Service which contain arbitration clauses. I.G. died before he reached the age of majority under New Mexico law. As such, the Terms of Service, including any arbitration clauses, were not enforceable against I.G. and are not enforceable against either his wrongful death estate, M.G., A.G., or E.A. Plaintiffs specifically disaffirm any and all Terms of Service agreements with the TikTok Defendants into which I.G. may have entered.

92.    Plaintiffs are suing the TikTok Defendants in their capacities as the owners, designers, developers, programmers, manufacturers, sellers, suppliers, distributors of their dangerously defective product, TikTok.

93.    None of Plaintiffs' causes of action against TikTok seek to treat TikTok as the publisher or speaker of information or content posted by a third party on TikTok.

94.    None of Plaintiffs' causes of action against TikTok seek to fault TikTok for any information or content posted on TikTok by a third party.

95.    The TikTok Defendants could have corrected the product defects alleged herein without altering any information or content posted on or messaged through TikTok. Likewise, TikTok could have acted reasonably under the circumstances alleged herein without altering any information or content posted on or messaged through TikTok.

## CLAIMS AGAINST THE TIKTOK DEFENDANTS

## (BY ALL PLAINTIFFS)

## COUNT I - STRICT LIABILITY

96.    Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as though set forth fully herein.

97.    TikTok is a product for purposes of New Mexico product liability law. The TikTok Terms of Service specifically refer to the TikTok "Platform and our related websites, services, applications, products, . . ." Terms of Service at paragraph 2. The TikTok Defendants designed, manufactured, marketed, sold, and distributed its TikTok product to I.G. in New Mexico, and I.G. used the TikTok product in New Mexico exactly as it was designed and intended to be used by the TikTok Defendants.

98.    TikTok poses an unreasonable risk of injury and death to its users, especially its teen and pre-teen users, and is unreasonably dangerous to its intended users because of one or more design defects. Specifically, at all relevant times, TikTok was (and is) defective and unreasonably dangerous, as designed, because TikTok:

   a.    was (and is) designed to create and sustain the addiction of TikTok users, especially vulnerable minor children, and to manipulate them into engaging in dangerous behaviors such as maximum TikTok use, all night TikTok use, and participating in dangerous and deadly challenges, including but not limited to the Blackout Challenge;

**COMPLAINT**                                                                                                   **Page 24 of 37**

b.  was (and is) designed and marketed for unsupervised use by minor children without containing all necessary and adequate safety features to protect children like I.G. and thereby preyed upon the vulnerability of children;

c.  was (and is) not safe for its intended and represented purposes but rather is unreasonably dangerous for its intended and foreseeable uses and/or misuses because it lacked all necessary safety features to protect users, including I.G.;

d.  did not (and does not) require age verification of TikTok users before the creation and use of a TikTok account in order to protect children;

e.  did not (and does not) contain adequate parental control systems or mechanisms to restrict or reduce TikTok use by children;

f.  did not (and does not) contain adequate parental notification systems to restrict or reduce TikTok use by children;

g.  did not (and does not) limit and/or prohibit minor children from using TikTok during regular homework and sleeping hours;

h.  contained (and contains) reward and incentive features such as "likes", "hearts", "notifications", "reminders", and "direct messaging" to manipulate, control and encourage minor children to engage in dangerous behaviors like all night TikTok use and participating in the Blackout Challenge;

i.  contained (and contains) notification and reminder features to remind and encourage children to use TikTok again and again at all hours of the day and night and to

**COMPLAINT**                                                                                      **Page 25 of 37**

manipulate children into engaging in dangerous behaviors including excessive Tik-Tok use and participating in the Blackout Challenge;

j.   was (and is) designed with an algorithm programmed to determine (or that mal-functioned and determined) that Blackout Challenge videos of individuals choking themselves until passing out were well-tailored and likely to be of interest to 13-year old I.G. and many other children and purposefully selected and presented those Blackout Challenge videos to the For You Pages of 13-year old I.G. and many other children in order to manipulate and encourage them to engage in dangerous and deadly behaviors like the Blackout Challenge;

k.   was (and is) designed with an algorithm that is not integrated with age verification, parental monitoring & notification, use restriction, and other similar protections for minor children such as I.G. and lacks the ability to determine that Blackout Chal-lenge videos of individuals choking themselves until passing out are not appropriate for and should not be selected and presented to the For You Page of 13-year old I.G. or any other all other children;

99.   Each of the above design features, included in or omitted from the design of the TikTok product, constitute separate product defects.  Each separate product defect, singularly or collectively, failed to protect and/or manipulated and encouraged minor children, including I. G., to engage in the dangerous the behaviors of (1) using TikTok for too many hours each day and/or using TikTok during regular sleeping hours (which results in sleep depri-vation and an altered mental state), and (2) attempting the Blackout Challenge to choke

**COMPLAINT**                                                                                       **Page 26 of 37**

himself until he passed out which, in this particular case, tragically resulted in I.G. accidentally hanging himself to death in the early morning hours of August 19, 2020.

100. The TikTok Defendants failed to carefully assess the risks of its product and failed to include numerous economically and technologically feasible design alternatives which would have protected I.G. and other children and would have prevented I.G.'s death. These economically and technologically feasible design alternatives include adequate age verification, parental control & notification systems, use restrictions during regular homework and sleeping hours, the elimination or reduction of addicting features, and the modification / reprogramming / integration of the TikTok algorithm to with age verification, parental monitoring & notification, use restriction, and other similar protections for minor children such as I.G. to enable the algorithm to determine that Blackout Challenge videos of individuals choking themselves until passing out are not appropriate for and should not be selected and presented to the For You Page of 13-year old I.G. or any other children. None of these design alternatives would require TikTok to modify or alter any content on the TikTok application.

101. The design defects of TikTok:

   a. caused I.G. to use TikTok for too many hours each day and/or to use it during the night when he should have been sleeping, causing sleep deprivation and an altered mental state, and

   b. were producing causes of the harm to and the accidental death of I.G.

102.  The unreasonably dangerous characteristics of TikTok are and have been known to the TikTok Defendants but were unknown to minor children like I.G. and his parents, M.G. and A.G.

103.  In addition to the design defects, TikTok poses an unreasonable risk of injury and death to its users and is unreasonably dangerous to its intended users because of the TikTok Defendants' failure to give adequate warnings of the known risks of TikTok, including foreseeable mental and physical injuries alleged herein, including death, posed by TikTok use when some or all such risks could be avoided by giving an adequate warning of such risks. The risks of TikTok were well known to the TikTok Defendants but unknown to minor children like I.G. and his parents, M.G. and A.G.

104.  The TikTok Defendants' failure to warn of known risks of TikTok use (including that addictive or compulsive use of TikTok can cause physical and mental injuries such as anxiety, depression, eating disorders, sleep deprivation, self-harm, suicidal ideation, suicide, participation in dangerous behaviors and even death from attempting TikTok challenges) was a producing cause of the harm to and the death of I.G.

105.  The harm to I.G. of which the product defects were a producing cause includes:

     a.   addiction;

     b.   sleep deprivation and altered mental state;

     c.   physical and mental pain and suffering;

     d.   emotional distress; and

e.   accidental death.

106.   The product defects of TikTok manipulated, encouraged, and induced I.G. to use TikTok excessively during regular sleeping hours and to attempt the Blackout Challenge which resulted in and caused I.G.'s pain and suffering, emotional distress, and death.

## COUNT II - NEGLIGENCE

107.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as though set forth fully herein.

108.   As the owners, designer, manufacturer, marketer, and distributor of TikTok, the TikTok Defendants owe TikTok users, especially the minor children that TikTok knowingly permits to create TikTok accounts and use TikTok, the duty to use ordinary care in designing, manufacturing, testing, marketing, distributing, and operating TikTok.

109.   The TikTok Defendants have breached their duty of ordinary care in designing, manufacturing, testing, marketing, distributing, and operating TikTok by:

a.   designing TikTok to create and sustain user addiction in children by including in its design the defective features alleged in Count I;

b.   failing to consider foreseeable risk of injuries and death to minor children, specifically encouraging children to engage in dangerous behaviors such as choking themselves until passing out in order to receive rewards such as likes and hearts;

c.   allowing minor children to use TikTok, or alternatively, failing to provide for reasonable parental controls over the use of TikTok by their minor children;

d.      allowing addictive, compulsive use of TikTok by minor users, or alternatively, failing to impose safe limits on such use;

e.      failing to implement reasonable safeguards to identify minor children and prevent addictive, compulsive use by such minor children

f.      failing to include all necessary safety features in the design of its product (as alleged in Count I) to protect users, including I.G., from the risks and hazards of TikTok including the risks that addictive or compulsive use of TikTok can cause physical and mental injuries such as anxiety, depression, eating disorders, sleep deprivation, self-harm, suicidal ideation, suicide, and death from attempting TikTok challenges;

g.      failing to make economically and technologically feasible design changes to its product (as alleged in Count I) to protect users, including I.G., from the risks and hazards of TikTok including the risks that addictive or compulsive use of TikTok can cause physical and mental injuries such as anxiety, depression, eating disorders, sleep deprivation, self-harm, suicidal ideation, suicide, and death from attempting TikTok challenges;

h.      failing to warn users, including minor children and their parents, about the risks attendant to addictive, compulsive use of TikTok (including that addictive or compulsive use of TikTok can cause physical and mental injuries such as anxiety, depression, eating disorders, sleep deprivation, self-harm, suicidal ideation, suicide, and death from attempting TikTok challenges); and

i.  concealing from users, including minor children and their parents, known risks attendant to the addictive, compulsive use of TikTok (including that addictive or compulsive use of TikTok can cause physical and mental injuries such as anxiety, depression, eating disorders, sleep deprivation, self-harm, suicidal ideation, suicide, and death from attempting TikTok challenges);

j.  failing to instruct users, including minor children and their parents, on how to safely use TikTok in order to adequately inform minor children and their parents about the risks of TikTok use and how to avoid the dangers and risks the TikTok knew about but failed to disclose (including that addictive or compulsive use of TikTok can cause physical and mental injuries such as anxiety, depression, eating disorders, sleep deprivation, self-harm, suicidal ideation, suicide, and death from attempting TikTok challenges);

k.  The TikTok Defendants' failure to use ordinary care as pleaded above constitutes negligence.

110.  The TikTok Defendants' acts and omissions constituting negligence, whether singularly or in combination:

a.  caused I.G. to be addicted to TikTok and to use it compulsively;

b.  induced I.G. to attempt the TikTok blackout challenge; and

c.  was a proximate cause of the harm to and the death of I.G.

111.  The harm to I.G. of which TikTok's negligence were a proximate cause includes:

**COMPLAINT**                                                                              **Page 31 of 37**

a.      addiction;

b.      sleep deprivation and altered mental state;

c.      physical and mental pain and suffering;

d.      emotional distress; and

e.      death.

112.   TikTok's negligence induced I.G. to attempt the TikTok blackout challenge which resulted in and caused I.G.'s pain and suffering, emotional distress, and death.

**COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

113.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as though set forth fully herein.

114.   The TikTok Defendants intentionally designed and operated TikTok to create and sustain addiction and to facilitate known harmful use of TikTok by underage users.

115.   The TikTok Defendants intentionally created and sustained addiction to TikTok to advance their objective of increasing advertising revenues.

116.   The TikTok Defendants failed to warn users, minor children using TikTok and their parents, of known risks posed by the addictive, compulsive use of TikTok.

117.   The TikTok Defendants intentionally made material misrepresentations concerning the risk of harm posed by TikTok use and failed to disclose known facts and information concerning such risks of harm.

118.    The TikTok Defendants are guilty of intentionally inflicting emotional distress on I.G. because:

    a.    TikTok Defendants' conduct was extreme and outrageous;

    b.    the TikTok Defendants acted intentionally to cause severe emotional distress in minor children using TikTok such as I.G. or, alternatively, the TikTok Defendants' conduct was reckless because the TikTok Defendants acted intentionally with utter indifference to or conscious disregard for the rights and safety of minor children using Instagram such as I.G.; and

    c.    as a result of the TikTok Defendants, conduct, I.G. experienced severe emotional distress.

119.    The conduct of the TikTok Defendants in designing and operating TikTok to create and sustain addiction and to encourage addictive, compulsive use of their product was and is extreme and outrageous because if goes beyond the bounds of common decency.

120.    The conduct of the TikTok Defendants in misrepresenting the risk of harm posed by TikTok and failing to disclose known facts and information concerning such risks of harm from addictive, compulsive use of TikTok was and is extreme and outrageous because if goes beyond the bounds of common decency.

121.    I.G.'s emotional distress caused by the TikTok Defendants was severe because it was of such intensity and duration that no ordinary person would be expected to tolerate it.

122.    The TikTok Defendants engaged in such extreme and outrageous conduct either intentionally to cause severe emotional distress in its users or recklessly with utter indifference to

**COMPLAINT**                                                      **Page 33 of 37**

or conscious disregard for the safety of TikTok users.

123.   The TikTok Defendants' extreme and outrageous conduct induced I.G. to attempt the Tik-Tok blackout challenge and was a proximate cause of I.G.'s pain and suffering, mental anguish, and death.

## COUNT IV - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (E.A. AGAINST THE TIKTOK DEFENDANTS)

124.   Plaintiff E.A. re-alleges and incorporates by reference all previous paragraphs of this Complaint as though set forth fully herein.

125.   Plaintiff E.A. had a close family relationship with I.G.  E.A. was I.G.'s grandmother, and she loved him dearly.  E.A. and I.G. loved one another and enjoyed spending time together.

126.   E.A. saw and observed how of the TikTok Defendants' dangerously defective product and negligence manipulated and encouraged I.G. to participate in the dangerous and deadly behaviors such as late night or all night TikTok use and the participation in the Blackout Challenge.

127.   On the morning of August 19, 2020, E.A. helped get I.G. off the bathroom door and lowered him to her floor.  She touched his body and listened for signs of life.  She heard a I.G.'s faint heartbeat after getting him on the floor and attempted to resuscitate I.G. by performing CPR.  E.A. held I.G. in her arms as he died on August 19, 2020.  E.A. suffered severe emotional distress as a result of seeing and observing I.G.'s death on the morning of August 19, 2020.

128.   The TikTok Defendants breached their duty of ordinary care to I.G. and caused I.G.'s death for all the reasons previously alleged in Plaintiffs' Counts I through III of this Complaint against the TikTok Defendants.  The TikTok Defendants' breach of their duty of care was

**COMPLAINT**                                                                 **Page 34 of 37**

a proximate cause of the severe emotional distress E.A. suffered as a result of seeing and observing I.G.'s death on the morning of August 19, 2020.

## COUNT V - WRONGFUL DEATH

129.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as though set forth fully herein.

130.   The tortious and wrongful acts and omissions of all Defendants resulted in the death of I.G. as pleaded above. Accordingly, all Defendants are liable to I.G.'s wrongful death estate under NMSA §§ 41-2-1 and 41-2-3.

## COUNT VI - LOSS OF CONSORTIUM

131.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as though set forth fully herein.

132.   A.G. and M.G. are I.G.'s parents, and they had a close and mutually dependent relationship with I.G.. E.A. is I.G.'s grandmother, and she had a close and mutually dependent relationship with I.G..  I.G.'s suffering and wrongful death has caused A.G., M.G., and E.A. to suffer severe emotional distress due to the loss of society and companionship they enjoyed with I.G.

133.   A.G., M.G., and E.A. seek recovery of all damages recoverable under New Mexico from the TikTok Defendants for their respective claims for loss of consortium.

## COMPENSATORY DAMAGES

134.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as though set forth fully herein.

135.   Plaintiffs request judgment against the TikTok Defendants for all compensable injuries, including, without being limited to, the following:

a.   I.G.'s physical, mental, and emotional pain and suffering;

b.   I.G.'s enjoyment of life;

c.   I.G.'s medical expenses;

d.   Wrongful death damages as allowed by NMSA § 41-2-3;

e.   Loss of consortium sustained by A.G. M.G., E.A;

f.   Costs;

g.   Interest as allowed by law; and

h.   Any other relief which the Court deems just and proper.

## PUNITIVE DAMAMGES

136.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as though set forth fully herein.

137.   The acts and omissions of the TikTok Defendants which resulted in harm to Plaintiffs as pleaded above were malicious, reckless, willful, wanton, oppressive, and/or fraudulent.

**COMPLAINT**                                                                 **Page 36 of 37**

Accordingly, Plaintiffs seek recovery of punitive damages in addiction to compensatory damages as allowed by New Mexico law.

## JURY DEMAND

138.   Plaintiffs hereby demand a trial by jury.

WHEREFORE, Plaintiffs pray for judgment against the TikTok Defendants for compensatory and punitive damages, for interest on their damages as allowed by law, for costs, and for all just relief.

DATED: August 9, 2022.

Respectfully submitted,

By: _/s/ Anthony K. Bruster_

**Anthony Bruster**
New Mexico Bar No. 20283

**BRUSTER PLLC**
680 N. Carroll Ave., Suite 110
Southlake, Texas 76092
Telephone:  (817) 601-9564
Facsimile:  (817) 796-2929
Email: akbruster@brusterpllc.com

Justin R. Kaufman
Rosalind B. Bienvenu
**DURHAM, PITTARD & SPALDING, LLP**
505 Cerrillos Rd., Suite A209
Santa Fe, New Mexico 87501
Telephone: 505-986-0600
Facsimile: 505-986-0632
Email: jkaufman@dpslawgroup.com
Email: rbienvenu@dpslawgroup.com

*Attorneys for Plaintiffs*

**COMPLAINT**                                                          **Page 37 of 37**